DENSLEY (STOVER v.).   See Case No. 13,-508.

DENSLEY (TENNY v.).   See Case No. 13,-834.

DENSLOW (ANDREWS v.).   See Case No. 372.

## Case No. 3,809.

### DENSMORE et al. v. SCHOFIELD et al.

[4 Fish. Pat. Cas. 148.][1]

Circuit Court, N. D. Ohio.   Nov. Term, 1868.

PATENTS—INFRINGEMENT OF COMBINATION—CHARACTER OF COMBINATION — CONSTRUCTION OF CLAIMS.

1. If an alleged infringer uses less than all of the elements of a combination, and substitutes something for the part which he omits, unless the substitute is a mere mechanical equivalent, there is no legal liability.

[Cited in Cross v. Livermore, 9 Fed. 608.]

2. Undoubtedly, independent separable and separate things, provided they relate to the same subject, may be separately claimed in the same patent.

[Cited in McComb v. Brodie, Case No. 8,708.]

3. A combination complete in itself and more or less extensive, is in the eye of the law, so far as its patentable quality is concerned, as much an identity and separate thing as if it were not a combination, but a single thing.

4. Where a patent contained a claim for "two tanks B, B, or their equivalent, when constructed and operating in combination with an ordinary railway car," and, also, a claim for "the frames C, C, C, C, the bolts 1, 2, 3, 4, and the cleats H, H, H, H, when constructed and operating, in combination with tanks B, B, and an ordinary railway car:" *Held*, that although both of these claims were for combinations, yet they were for combinations separate in their nature, and capable, if desired, of separate use.

5. It is error to say that a patent of that kind is a unit, and that all the parts, including frames, bolts, and cleats, must be used in order to infringe either claim.

This was a motion for a new trial, in an action on the case, brought [by James and Amos Densmore against William C. Schofield and others] to recover damages for the infringement of letters patent [No. 53,794] for an "improved car for transporting petroleum," granted to plaintiffs April 10, 1866, and reissued May 29, 1866 [No. 2,261]. The case was tried in February, 1867, and resulted, under the charge of the court, in a verdict for the defendants. The grounds upon which the motion for a new trial was based, the description of the invention, and the claims of the original and reissued patents, will be found in the opinion.

J. C. Clayton and S. J. Andrews, for plaintiffs.

Ranney & Bolton, for defendants.

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

SWAYNE, Circuit Justice. This is a motion for a new trial, upon the ground that in the charge to the jury, the specifications of the patent were wrongly construed in a material particular by the court; and the question of the propriety of the instructions given comes before us for review, and is the only question to be considered. The entire charge is in writing, and is a very clear and comprehensive view of the subject before the jury. The particular part of the charge, to which exception is taken, is this: "On the part of the plaintiffs, it is claimed that their patent consists in securing two tanks upon a common railway car over its trucks, for the purpose of carrying oil in bulk. The defendants claim that the patent consists of the car with tanks fastened to it in the mode described in the specification, and for the same purpose. The only difference between them is in that that refers to the fastening of the tanks to the car. Without going into a lengthened argument, suffice it to say, that in my judgment the true construction of the letters patent is that the patent consists of the railway car with two tanks placed over the trucks, and secured and fastened to the platform substantially similar and in the way described in the specification. That a patent of this kind is a unit, and that all its parts are material, viz: the railway car, the two tanks, and the fastening. The question is then directly raised whether the cleats used by the defendants in their machine for fastening the tanks to the platform are substantially similar to the frame-work, rods, and bolts described in plaintiff's patent."

The effect of that instruction on the point of law was, that the specifications comprised as it were, one thing, an entirety; that the patent was for a combination; that combination not consisting of several separate and distinct parts of patentable and independent things, but a combination consisting of all the parts united. So that the well-known rule of law upon the subject applied that one using any particular part of one entire instrument or machine, would not be a violator of the rights secured to a plaintiff by his patent; and that if only one part, or a portion of this combination were used by the defendants—if the infringement complained of by the plaintiffs consisted in that, and that alone—then there could be no recovery: that there was no patent except for the entire combination, and that if the defendants were guilty of any infringement, it was an infringement upon the separate parts of the patent and not upon the entire combination.

The effect of this instruction upon the verdict was necessarily fatal to the cause of the plaintiff, and a verdict was accordingly rendered for the defendants.

The correctness of this instruction, which was the turning point of the case, is now before us for re-examination, and the question is, as has already been said: Is this a patent for a united and single combination, made up

of several parts, indeed, but still a unit; or is it a patent for several distinct things which may or may not be used together, and which, as separate and distinct claims, the patentee claims to cover by his patent?

In the examination of this subject, in order to avail ourselves of all the light accessible to us, it will be useful to advert to the patent issued to these plaintiffs, the patentees, April 10, 1866, which was their first patent upon the subject. That patent describes at length and with clearness in its specifications the same things, no more, no less than are described in the letters patent of May following, which is the reissued patent. After a full description of the several parts, which the plaintiffs claim as their invention, the summary proceeds as follows:

"What we claim as our invention and desire to secure by letters patent, are the two tanks B, B, attached to the platform of a car A, A, by means of the frame work C, C, C, C, and C', C', C', C', together with the bolts, 1, 2, 3, 4, and 1', 2', 3', 4', directly over the trucks, when the same are constructed in the combination as hereinbefore described, and for the purpose set forth hereinbefore, or any other mechanical construction substantially the same and which will produce the same result."

Now in this patent and in this summary of the claim or claims of the patentees, one general combination is described. There is no separate claim, and there is no attempt to make a separate claim—nothing which looks in that direction, in respect to the separate parts of which the general united combination is made up. Upon this patent undoubtedly the law arising would be as it is laid down in numerous cases, that where a patent is obtained as one combination of a number of parts which in themselves are not new, there is no infringement, in the eye of the law, of the right secured by such a patent unless the entire combination is used. If the alleged infringer uses less than all of the combination and nothing else, he is not liable. If he uses less than all and substitutes something for the part omitted different from that which he omits, and which answers the same purpose, unless the substitute be a mere mechanical equivalent used for the combination, then for the reasons I have stated, and according to the rule of law as well established on the subject, there is no legal liability.

Such undoubtedly would be the rule arising upon this original patent. But that original patent was surrendered and a reissued patent was taken out by the patentees in May of the same year. That patent is also in terms for an improved car for transporting petroleum, as was the original patent. The description contained in the specification is stated at length, as follows: "On the platform of an ordinary railway car A, A. erect two large, light, tight, firm, stout tanks B, B, of wood-staves, hoops, or sheet-iron united and caulked, or of other material, and put each tank directly over one of the trucks, so that the strain of the weight of the load will be upon those parts of the car that are stronger and better able to bear it. On the top of each tank put a frame of four bars, C, C, C, C, through the corners of the frame, close to and outside of the tank, and down through the platform of the car, pass the bolts, 1, 2, 3, 4; on the ends of the bolts, above the frame and below the platform, put screws, and nuts, and washers, and fasten and press the tanks down upon the car firmly, and by means of the frame, and bolts, and screws, besides attaching and fastening the tank and car together, the frame and bolts will act as guys or braces and tend to prevent any shock or jog from the swaying of the car. Upon the platform, close to the outside and bottom of the tank, bolt the cleats or steps H, H, H, H, to keep the tank firmly in its place and prevent any jar or moving from any sudden stopping or starting of the car. In the top head of each tank make a man-hole through which to pour in the substance to be carried. Also, for a man to get into the tank for any purpose. Around the man-hole, put a casing, and over the casing and man-hole put a man-head or cover D to prevent rain or snow, or any thing from leaking or falling into the tank. At the bottom of each tank put in a faucet E by which to draw off the contents. Up the sides of each tank, next the end of the car, put the steps F, to enable one to get on and off the tank readily. And across from one tank to the other, put a run-way G, to enable brakemen and others to pass over the car with facility."

So far the specifications are nearly verbatim with the original patent. Then it proceeds: "The nature of our invention consists in combining two large, light, tight, firm, stout tanks with an ordinary railroad car, and making the tanks practically a part of the car so as to carry the desired substance in bulk in the car itself, or in a permanent fixture or part thereof, instead of in barrels, casks, hogsheads, tierces, or other movable vessels, as is now universally done on railway cars, and thereby save the carrying the barrels, casks, tierces, hogsheads, or other movable packages."

So far, this is verbatim the description in the original patent, and, if the specification stopped there, the legal result would be the same as in the case of the original patent. But it proceeds further; let us see if the further claims affect this legal result. "What we claim as our invention, and desire to secure by letters patent, are: First. The two tanks, B, B, or their equivalent, when constructed and operating in combination with an ordinary railway car substantially as and for the purposes set forth. Second. The two tanks, B, B, or their equivalent, when set directly, or nearly so, over the car-trucks, and when constructed and operating in com-

bination with an ordinary railway car, substantially as, and for the purposes, set forth."

Viewing these two claims as a summary, in the light of the preceding description—and the whole instrument must be construed by 'its entire language—viewing these two claims in this light, it seems to me to be very clear that they mean substantially the same thing. One goes a little more into detail than the other, but in the view which I take of their proper construction, upon the face of the paper, my conclusion is that they mean, as I have remarked, substantially the same thing, and that the two claims intend to claim, and do claim a combination of two tanks with a railway car, each tank put over one of the trucks; or if the combination of the tanks with the car be too broad, it is not too broad in the light of the obvious meaning of this claim—that the tanks may be used in this way applied and made fixtures to the car; or the vessel used to hold the oil may be constructed originally with the car, and in the language of the prior part of the specification "made a part of the car." The difference is immaterial, and one would be equivalent to the other. Here again, in my judgment, is a combination claim, a combination to the limited extent only to which I have adverted in giving this construction. It is a combination of the tanks, or the equivalent of tanks, with the car, each tank resting over one of the trucks of the car.

Then comes the third claim: "Third. The frames C, C, C, C, the bolts 1, 2, 3, and 4, and the cleats H, H, H, H, when constructed and operating in combination with tanks B, B, and an ordinary railway car, substantially as, and for the purposes, set forth." In my judgment this is another separate, distinct, and independent claim for a combination—a combination to be made with the prior combination made by the first and second claims, and which first combination has been already sufficiently considered. The second claim is for a particular instrumentality. This third claim is substantially distinct, or it is to be used in combination with the prior combination, if used at all.

Then comes the fourth claim: "Fourth. The steps F, F, the man-holes and the man-heads D, D, the faucets E, E. and the runway G, when constructed and arranged in combination with tanks B, B, and an ordinary railway car substantially as herein set forth and described." In my judgment, this is for another instrumentality to be used in combination with the first one described.

To speak more specifically of the claims in this patent, the proper construction of the claims is, that the two first claims are for a combination of a car and tanks. The third claim is for another and distinct, separate, and separable thing, to be used with the prior combination. Then the fourth claim for the steps, etc., is to be used also in com-

bination with the first combination as expressed in the first and second claims.

Now, it is true, in the view which I take of this part of the patent, that these are combinations, but separate in their nature, and may be used separately; and it was the meaning of the patent or of the patentees in the specification that they should be separated, or they might be separately used, if any one desired to so use them. Now, undoubtedly, independent things, separable and separate things, where any combination arises, provided they be cognate, relate to the same invention and have relation to the same subject, the same object to be accomplished; undoubtedly these separate claims can be made in the same patent. If they have no such tie of connection as I have mentioned; if they are for separate and entirely different things, then the patent would be void because it attempted to unite what can not be united; but if they be connected by a common tie, a common object or purpose, then undoubtedly these different claims can be united in one and the same patent. So far as I am advised, an objection, such as that adopted in this case, has never been sustained, founded upon a patent of this character.

Now, here, as I have remarked, there are combinations in this case, and the patent is for such combinations throughout. It claims nothing new from the beginning to the end. But undoubtedly there may be separate combinations and each separate combination may or may not all be covered by the same patent, as there may be separate and several things in the combination all covered by the same patent. When there is a combination complete in itself, more or less extensive, it is in the eye of the law, so far as its patentable quality is concerned, as much an identity and separate thing as if it were not a combination, but a single thing independent and complete in itself, and having no element of combination in it. Then I hold that the first and second claims, in the summary of this patent, are for such a combination, and there they stop. Then there is the third claim to be used in combination with the prior and independent combination; and then there is the fourth claim, still relating to the other claims, and also for old things, to be used with the separate and independent combination described in the first and second claims.

Now if this construction of the patent be correct, an infringer might be guilty of an infringement of the combination of the tanks with the car, although he did not use the frame work described in the third claim, nor the steps described in the fourth. This, after the closest investigation I have been able to give the subject, and I have examined it with a good deal of care, is the conclusion to which I have been constrained to come.

Now if this were the proper construction

of the patent, then there would be still another branch of the case with respect to the question of novelty and utility; but that would be a question exclusively for the jury, and it may be that here the testimony showed that there were no such elements of invention in the subject as are indispensable —as would be requisite—in the patent law.

But however clear that may have been, that was a conclusion for the jury. It was a question upon which the plaintiffs had a right to the benefit of an investigation before the jury—of course under the enlightened instruction of the court. The construction of the patent given in this case below, as I understand it, in effect withdrew this question entirely from the action of the jury. However that might have been, under that instruction, it seems to me very clear that there were questions—the questions I have mentioned—which should have been submitted to the jury.

The effect of the claim for an independent combination, as made in the first and second claims of the patent, the legal presumption flowing from such a state of the case, is, that the plaintiffs, however clear the evidence may have been against them upon the points of utility and novelty, may have sustained prejudice, and if that be so, there is but one step further, and that is, the verdict must be set aside. The verdict will be set aside, a new trial granted, and costs will abide the result.

[NOTE. A suit in equity between the same parties for infringement of the same patent resulted adversely to the complainants, and the decree was affirmed, on appeal to the supreme court, on the ground that the patent was void for want of novelty and invention. See Denmore v. Scofield, 102 U. S. 375.]